**RECORD NUMBER 13-2358**

# IN THE
# United States Court of Appeals
## FOR THE FOURTH CIRCUIT

KEVIN M. LYNN,

*Plaintiff - Appellee*,

v.

MONARCH RECOVERY MANAGEMENT, INC.,

*Defendant - Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

**RESPONSE BRIEF OF APPELLEE
KEVIN M. LYNN**

Michael C. Worsham
1916 Cosner Road
Forest Hill, MD 21050
(410) 557-6192
mcw@worshamlaw.com

*Counsel for Appellee*                               January 16, 2014

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. __13-2358__    Caption: __Kevin M. Lynn v. Monarch Recovery Management, Inc.__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Kevin M. Lynn__
(name of party/amicus)

_____

who is __appelle__, makes the following disclosure:
    (appellant/appellee/amicus)

1.  Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO

2.  Does party/amicus have any parent corporations?  ☐ YES ☑ NO
    If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.  Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO
    If yes, identify all such owners:

- 1 -

4. Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?  ☐ YES ☑ NO
If yes, identify entity and nature of interest:

5. Is party a trade association? (amici curiae do not complete this question)  ☐ YES ☑ NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6. Does this case arise out of a bankruptcy proceeding?  ☐ YES ☑ NO
If yes, identify any trustee and the members of any creditors' committee:

Signature: /s/ Michael C. Worsham                    Date: Nov. 15, 2013

Counsel for: Appellee Kevin M. Lynn

# CERTIFICATE OF SERVICE
**************************

I certify that on  Nov. 15, 2013  the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

Michael D. Alltmont, Esq.
Bryan C. Shartle, Esq.
Sessions, Fishman, Nathan & Israel
3850 N. Causeway Blvd.
Suite 200
Metaire, LA 70002-7227

/s/ Michael C. Worsham                              November 15, 2013
     (signature)                                        (date)

07/19/2012                          - 2 -
SCC

## TABLE OF CONTENTS

CORPORATE DISCLOSURE

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

STATEMENT OF SUBJECT MATTER
AND APPELLATE JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF ISSUE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    A.    Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    B.    The District Court Properly Granted Summary Judgment Because MRM Violated the TCPA's Charged Call Prohibition . . . . . . . . . . . 7

    C.    Injunctive Relief Under The Federal TCPA Was Proper . . . . . . . . . 11

    D.    MRM's Federal TCPA Violations Means That MRM Also Violated the Maryland TCPA . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

CERTIFICATE OF COMPLIANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

# TABLE OF AUTHORITIES

## CASES

*Capital Tool & Manufacturing Co. v. Maschinenfabrik Herkules*,
    837 F.2d 171 (4th Cir. Va.1988) ...................................................................11

*Environmental Defense Fund v. Lamphier*, 714 F.2d 331 (4th Cir. 1983)..............11

*Holland v. Washington Homes, Inc.*, 487 F.3d 208 (4th Cir. 2007).........................7

*Merritt v. Old Dominion Freight Line, Inc.*, 601 F.3d 289 (4th Cir. 2010) ..............7

*Mims v. Arrow Financial Services, LLC*, 132 S. Ct. 740 (Jan. 18, 2012) .................1

## STATUTES AND REGULATIONS

15 U.S.C. § 1692..........................................................................................................1
15 U.S.C. § 1692k(d) ..................................................................................................1
28 U.S.C. § 1291..........................................................................................................1
28 U.S.C. § 1331..........................................................................................................1
47 U.S.C. § 227.....................................................................................................1, 12
47 U.S.C. § 227(a)(1)..................................................................................................4
47 U.S.C. § 227(b) ......................................................................................................1
47 U.S.C. § 227(b)(1)(A)(iii) ............................................................................. 2, 6-12
47 U.S.C. § 227(b)(1)(A)(iii) (2011) ..........................................................................1
47 U.S.C. § 227(b)(B)..................................................................................................8
47 U.S.C. § 227(b)(1)(B) .......................................................................................8, 10
47 U.S.C. § 227(b)(2)(B) ............................................................................................9
47 U.S.C. § 227(b)(2)(C) ............................................................................................9
47 U.S.C. § 227(b)(3)(A) ..........................................................................................11
47 C.F.R. § 64.1200(a)(1)(iii) .....................................................................................9
47 C.F.R. § 64.1200(a)(1)(iii) (2011) .....................................................................7, 8
47 C.F.R. § 64.1200(a)(2)............................................................................................8

Maryland Ann. Code, Commercial Law Art., §§ 14-3201-3202 ...............................1
Maryland Ann. Code, Commercial Law Art., § 14-3201(2) ...................................12
Maryland Ann. Code, Commercial Law Art., § 14-3202(b) ...................................12

## RULES

Fed. R. Civ. P. 56(c)....................................................................................................7
Fed. R. Civ. P. 56(c)(2)...............................................................................................7

# STATEMENT OF SUBJECT MATTER
# AND APPELLATE JURISDICTION

On August 30, 2011 Plaintiff-Appellee Kevin M. Lynn filed this case in the Circuit Court for Baltimore County, Maryland against Defendant-Appellant Monarch Recovery Management, Inc. (MRM) pursuant to the federal Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 (Counts 1-2), the Maryland TCPA, Maryland Ann. Code, Commercial Law Art., §§ 14-3201-3202 (MD-TCPA) (Counts 3-4), and the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §§ 1692 *et seq.* (Count 5-6). JA 17-27.

MRM removed the case to the United States District Court for the District of Maryland, with jurisdiction pursuant to the FDCPA, 15 U.S.C. § 1692k(d), the TCPA, 47 U.S.C. § 227(b), and 28 U.S.C. § 1331. *Mims v. Arrow Financial Servs., LLC*, 132 S. Ct. 740 (January 18, 2012) (holding the TCPA's permissive grant of jurisdiction to state courts does not deprive U.S. District Courts of federal-question jurisdiction over private TCPA suits). Appellate jurisdiction is pursuant to 28 U.S.C. §1291.

MRM appeals from an October 8, 2013 final Stipulation and Order of the District Court, which dismissed Lynn's MD-TCPA claim (in Count 4) and FDCPA claims pursuant to a settlement agreement, entered Judgment in favor of Lynn for $58,000 for his federal TCPA and remaining MD-TCPA claims, and which expressly

preserved the right for MRM to appeal. JA 145-146.

## STATEMENT OF THE ISSUE

Whether the District Court erred in granting Lynn summary judgment and ruling that MRM's 37 calls made without consent using MRM's automated telephone dialing system (ATDS) to Lynn's VOIP line for which Lynn incurred a charge for each of the 37 calls, violated the Telephone Consumer Protection Act, 47 U.S.C. § 227(b)(1)(A)(iii) (2011), which makes it unlawful to make any call using an ATDS without prior express consent to any telephone number assigned "to any service for which the called party is charged for the call."

## STATEMENT OF THE CASE

Lynn adopts the Statement at page 2 of Appellant MRM's Brief, most of which is included in Appellee's Statement of Subject Matter and Appellate Jurisdiction, *supra*.

## STATEMENT OF FACTS

Between July 2010 and January 2011 three separate accounts were placed for collection with MRM, a debt collector.[1] Lynn is not the actual or alleged debtor for

---

[1] *See* MRM account collection logs, JA at 28-31 (Bank of America account of George Teddy), JA at 32-33 (Citibank account of George Teddy), JA at 34-37 (Chevron account of Mark Lynn).

2

any of the three accounts.[2] MRM was not provided Lynn's voice over internet protocol (VOIP) phone number (ending in 2250) by any of the two debt buyers of the three collection accounts (Asset Acceptance, LLC (which purchased 2 accounts) and Security Credit Service, LLC (SCS) (1 account)), or by any of the original creditors of the accounts.[3] Debt buyer Asset Acceptance incorrectly provided Lynn's home address in Frederick, Maryland to MRM as that of one of the actual debtors for one of the three accounts,[4] and provided no address for the second of the three accounts,[5] and Security Credit Service provided the correct address of the actual debtor who was located in Tacoma, Washington for the third of the three accounts that MRM attempted to collect by calling Lynn's VOIP line.[6]

MRM obtained several phone numbers for the three accounts through a completely automated process from a data provider called Accurint.[7] Without any independent or human review or decision-making over the phone numbers provided

---

[2] *Id. See also* JA at 64-66, Aug. 17, 2012 Affidavit of Kevin M. Lynn.

[3] *See* top left column in the "PHONE" field in JA 28, JA 32, and JA 34.

[4] JA at 28, top left column in the "ADDRESS" field. The CLIENT field in the top-most left identifies the entity from whom MRM obtained each collection account.

[5] JA at 32, top left column in the "ADDRESS" field.

[6] JA at 34, top left column in the "ADDRESS" field.

[7] JA at 28 (Lines 008-11), JA at 32 (Lines 008-9), and JA at 34 (Lines 10-13).

any of the three accounts.[2] MRM was not provided Lynn's voice over internet protocol (VOIP) phone number (ending in 2250) by any of the two debt buyers of the three collection accounts (Asset Acceptance, LLC (which purchased 2 accounts) and Security Credit Service, LLC (SCS) (1 account)), or by any of the original creditors of the accounts.[3] Debt buyer Asset Acceptance incorrectly provided Lynn's home address in Frederick, Maryland to MRM as that of one of the actual debtors for one of the three accounts,[4] and provided no address for the second of the three accounts,[5] and Security Credit Service provided the correct address of the actual debtor who was located in Tacoma, Washington for the third of the three accounts that MRM attempted to collect by calling Lynn's VOIP line.[6]

MRM obtained several phone numbers for the three accounts through a completely automated process from a data provider called Accurint.[7] Without any independent or human review or decision-making over the phone numbers provided

---

[2] *Id. See also* JA at 64-66, Aug. 17, 2012 Affidavit of Kevin M. Lynn.

[3] *See* top left column in the "PHONE" field in JA 28, JA 32, and JA 34.

[4] JA at 28, top left column in the "ADDRESS" field. The CLIENT field in the top-most left identifies the entity from whom MRM obtained each collection account.

[5] JA at 32, top left column in the "ADDRESS" field.

[6] JA at 34, top left column in the "ADDRESS" field.

[7] JA at 28 (Lines 008-11), JA at 32 (Lines 008-9), and JA at 34 (Lines 10-13).

by either its clients (the debt buyers) or Accurint, MRM automatically assumed these numbers, including Lynn's VOIP number, were correctly associated with each of the collection accounts, input the numbers into MRM's automated telephone dialing system (ATDS), and then called Lynn's VOIP number using MRM's ATDS.[8]

MRM called Lynn's VOIP number a total of 37 times from July 19, 2010 to May 17, 2011, for which Lynn was charged for each of the calls by his VOIP service provider.[9] MRM first started calling Lynn's VOIP line 9 times from July 19, 2010 to August 9, 2010 to collect the Bank of America account of George Teddy, which had been purchased by Asset Acceptance, LLC.[10] On August 9, 2010 Lynn told MRM that it was calling the wrong number and that he had no idea who the debtor was.[11] MRM stopped calling on August 9, 2010, but started calling Lynn's same VOIP number again on March 7, 2011 to collect the Chevron account of Mark Lynn who lived in

---

[8] MRM stipulated that its dialing equipment used to call Lynn was an *automatic telephone dialing system* as defined by the TCPA at 47 U.S.C. § 227(a)(1). *See* JA at 82, n. 12.

[9] JA at 65, ¶ 37 (Lynn Affidavit), JA at 20-21 (list of the 37 calls in Complaint).

[10] JA at 29, Lines 040-041 to Lines 061-63.

[11] JA at 29, Lines 061-62.

4

Tacoma, WA, which account had been purchased by Security Credit Service, LLC.[12]

On May 12, 2011 Lynn called MRM twice to tell MRM to stop calling, and that MRM was violating the law, and that Lynn was charged for MRM's calls.[13] MRM nonetheless still called Lynn three more times after May 12, 2011, on May 13, 2011 and twice on May 17, 2011, before finally ending its call harassment of Lynn to Lynn's VOIP line.[14]

Lynn's VOIP phone number ending in 2250 is located at his residential home in Frederick, Maryland where Lynn lives with his wife and children.[15] Lynn is charged for each incoming call to his VOIP line in 6 second increments.[16] Lynn is charged for each incoming call and separately for the caller ID information transmitted with each incoming call to his VOIP line.[17]

---

[12] JA at 35, Lines 045-46, JA at 20 (Complaint), and JA at 65 (Lynn Affidavit at ¶ 10).

[13] JA at 65, Lynn Affidavit at ¶ 22, and JA at 33, Lines 58-65.

[14] JA at 36, Lines 010-016, JA at 21 (Complaint), and JA at 65 (Lynn Affidavit at ¶ 10).

[15] JA at 64, Lynn Affidavit at ¶¶ 1, 4, 6, and at JA at 65 at ¶ 17 (stating that MRM's calls annoy Lynn's wife and kids also).

[16] JA at 65, Lynn Affidavit at ¶¶ 9-12.

[17] JA at 65, Lynn Affidavit at ¶ 12.

## **SUMMARY OF ARGUMENT**

The District Court correctly granted Lynn summary judgment under both the federal and Maryland TCPA, because there is no dispute that MRM called Lynn without prior express consent using an ATDS to Lynn's VOIP line 37 times for which Lynn was charged for each of MRM's 37 calls. Such calls clearly violate the federal TCPA, 47 U.S.C. § 227(b)(1)(A)(iii) (and in turn the Maryland TCPA), which specifically outlaws non-emergency ATDS calls made without consent for which the called party incurs a charge for the call. There are no applicable exceptions to this prohibition, including for calls to residential lines.

# ARGUMENT

### A.  Standard of Review

An appellate court reviews a summary judgment decision de novo, applying the same standard as the district court. Fed. R. Civ. P. 56(c); *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 213 (4th Cir. 2007). Under that standard, summary judgment is appropriate only when "there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c)(2), *Merritt v. Old Dominion Freight Line, Inc.*, 601 F.3d 289, 295 (4th Cir. 2010). The appellate court must view the facts and evidence in the light most favorable to the nonmoving party, and draw all reasonable inferences in their favor. *Holland*, 487 F.3d at 213.

### B.  THE DISTRICT COURT PROPERLY GRANTED SUMMARY JUDGMENT BECAUSE MRM VIOLATED THE TCPA'S CHARGED CALL PROHIBITION

The District Court properly granted summary judgment because MRM's 37 non-emergency ATDS calls to Lynn's VOIP line made without prior express consent and for which Lynn was charged violated the "charged call" provision of the TCPA at 47 U.S.C. 227(b)(1)(A)(iii).

In Count 1 Lynn alleged a violation of the charged call provision of both the TCPA statute (47 U.S.C. § 227(b)(1)(A)(iii)) as well as the FCC regulation which incorporated this same statutory prohibition verbatim as a regulation at 47 C.F.R. §

7

64.1200(a)(1)(iii) (2011). JA at 23 (at § 56) and JA at 24 (at § 57). Lynn did not allege a violation of another or separate TCPA or FCC provision, and the District Court correctly found it irrelevant that MRM may or did not violate what MRM refers to as the residential provision, since no such violation was even alleged. JA at 94, top ("That Monarch would be entitled to summary judgment for an alleged violation of the residential telephone line provision is irrelevant: no such allegation is present here."). All that is relevant, as described above and as the lower court found, is that "Lynn's TCPA claim thus fits squarely within the separate prohibition of the call charged provision." JA at 97, bottom.

MRM's statutory construction argument that the TCPA has mutually exclusive provisions is irrelevant, but also flawed and unavailing for several reasons. The TCPA's provisions are not mutually exclusive, and MRM offers no basis for asserting so.

The separate TCPA subsections at § 227(b)(1)(A)(iii) and § 227(b)(B) target and address different calling practices and harms. 47 U.S.C. § 227(b)(1)(B), the subsection which governs calls to residences, applies only to artificial or prerecorded voice messages. There is no mention of ATDS in this subsection or in the related FCC regulation at 47 C.F.R. § 64.1200(a)(2). Therefore, calls using an ATDS must necessarily be governed under § 227(b)(1)(A)(iii) and the related and verbatim FCC

8

regulation at 47 C.F.R. § 64.1200(a)(1)(iii), because that is the only subsection which governs ATDS calls.

The FCC recognized the distinction between different TCPA subsections and its discretionary authority to grant exemptions in a 2008 declaratory ruling addressed to the debt collection industry:

> 3. Section 227(b)(2)(B) authorizes the Commission to exempt noncommercial and certain other classes of calls from the prohibition on prerecorded messages <u>to residences</u>. By comparison, section 227(b)(2)(C) gives the Commission authority to exempt from the prohibition on autodialed or prerecorded message calls <u>to wireless numbers</u> contained in section 227 (b)(1)(A)(iii) only those "calls to a telephone number assigned to a cellular telephone service that are not charged to the called party, subject to such conditions as the Commission may prescribe as necessary in the interest of the privacy rights the provision is intended to protect."

*In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Request of ACA International for Clarification and Declaratory Ruling*, CG Docket #02-278, at ¶ 3 (Jan. 4, 2008) (emphasis in original). The FCC cited 47 U.S.C. § 227(b)(2)(C), which provides that:

> the Commission . . . may, by rule or order, exempt from the requirements of paragraph (1)(A)(iii) of this subsection calls to a telephone number assigned to a cellular telephone service that are not charged to the called party . . .

This TCPA subsection does not give the FCC authority to exempt calls for which the called party is charged, only calls to a cell phone number where the called party is not charged. So the FCC has no authority to exempt calls like MRM's 37 calls to Lynn

9

for two reasons, because the calls were made to a residential line (not to a wireless number), and because the called party (Lynn) was charged for the calls. This is a result of the different underlying statutory authority and to the different types of calls and harms which that Congress sought to address in different subsections of the TCPA.

MRM arbitrarily inserts or uses the word "*specifically*" when referencing the TCPA's restrictions for residential lines at § 227(b)(1)(B), and then inserts or uses the word "*generally*" (or catch-all) when referring to the TCPA's charged call restrictions at § 227(b)(1)(A)(iii). But MRM offers no basis for arbitrarily inserting these terms in this way, and no explanation of why one restriction is supposedly "specific" and one is "general" or catch-all. JA at 15, top.

MRM's confusing *expressio unius est excluso alterius* argument is also flawed and directly contrary to the plain language of the TCPA. MRM argues that the TCPA's language prohibiting calls to any service for which the called party is charged is only intended to apply to calls to other wireless services. JA at 15, top, and JA at 16, middle. This is plainly incorrect and a frivolous argument, because the relevant TCPA language prohibits calls to "**any** service for which the called party is charged for the call," not just calls to other wireless services as MRM argues. 47 U.S.C. § 227(b)(1)(A)(iii) (emphasis added). Lynn's VOIP service is provided to his

landline number, and this number and the VOIP service provided to him for this number is clearly covered by this subsection of the TCPA. The protection to Lynn against charged calls provided by § 227(b)(1)(A)(iii) are not negated because the FCC exempts certain other types of calls (artificial or prerecorded) to residential lines pursuant to separate and limited statutory authority.

This Court should affirm the summary judgment granted to Lynn in Count 1.

### C. Injunctive Relief Under The Federal TCPA Was Proper

The lower court correctly enjoined MRM pursuant to the TCPA's injunctive relief provision sought by Lynn in Count 2, because the statutory violations were proven. 47 U.S.C. § 227(b)(3)(A) (providing for actions to enjoin violations), *Environmental Defense Fund v. Lamphier*, 714 F.2d 331, 338 (4th Cir. 1983) ("Where a statute authorizes injunctive relief for its enforcement, plaintiffs need not plead and prove irreparable injury."), *Capital Tool & Mfg. Co. v. Maschinenfabrik Herkules*, 837 F.2d 171 (4th Cir. Va. 1988) ("All that need be proved is a violation of the statute. . .(citations omitted) . . . In each case the complainant proved a statutory violation after a full trial on the merits, and the court properly granted a final injunction to enforce the statute without requiring proof of irreparable harm.").

Thus although MRM's Brief contained no argument regarding injunctive relief, the lower court's decision should be affirmed for Count 2 as well.

11

### D.  MRM'S Federal TCPA Violations Means That MRM Also Violated The Maryland TCPA

Lynn's claims in Count 3 under the Maryland TCPA are dependent on proving a violation of the federal TCPA in Count 1. Maryland Ann. Code, Commercial Law Art. (CL), § 14-3201(2) (MD-TCPA) ("A person may not violate: . . . (2) The Telephone Consumer Protection Act, 47 U.S.C. § 227").  Since Lynn proved that MRM violated the federal TCPA in Count 1, the MD-TCPA violations are also proven.  Lynn is an individual under and within the meaning of the MD-TCPA, and has standing to bring this action. CL § 14-3202(b) ("an individual who is affected by a violation of this subtitle may bring an action against a person that violates this subtitled to recover: (1) Reasonable attorney's fees; and (2) Damages in the amount of the greater of: (i) $500 for each violation; or (ii) Actual damages sustained as a result of the violation.").

Accordingly summary judgment under the MD-TCPA in Count 3 (JA at 116, ¶ 2(a)) was proper and should be affirmed.

### CONCLUSION

For the reasons above, the District Court correctly ruled that MRM's 37 non-emergency calls to Lynn's VOIP phone line made with an ATDS without prior express consent violated the TCPA, because Lynn was charged for all the calls in violation of 47 U.S.C. § 227(b)(1)(A)(iii).  This Court should affirm the District

12

Court's ruling which granted summary judgment to Lynn on this issue and in Counts 1, 2 and 3.

<div style="text-align: right">

Respectfully submitted,

/s/   Michael C. Worsham
Michael C. Worsham, Esq.
1916 Cosner Road
Forest Hill, Maryland 20150-2210
(410) 557-6192
mcw @ worshamlaw.com

*Counsel for Appellee Kevin M. Lynn*

</div>

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Rule 32(a)(7)(B)(ii) of the Federal Rules of Appellate Procedure, Appellee Lynn provides the following Certificate of Compliance. Appellee's Brief submitted for filing in this appeal was prepared in Word Perfect in a 14 point, proportionally spaced, Times New Roman font.  It contains  2,753 words exclusive of the cover page, Table of Contents, Table of Authorities, Certificate of Compliance, and Certificate of Service.  The Brief complies with Rule 32(a) of the Federal Rules of Civil Procedure.

## **CERTIFICATE OF SERVICE**

On January 16, 2014 the required copies of the foregoing Brief of Appellee were filed with the Clerk, United States Court of Appeals for the Fourth Circuit, via hand delivery, and electronically using the Court's CM/ECF system which will send notification of the filing to Appellant's counsel of record:

    Bryan C. Shartle, Esq. and Michael D. Alltmont, Esq.
    Sessions, Fishman Nathan & Israel, LLC
    3850 North Causeway Boulevard
    Suite 200
    Two Lakeway Center, Metairie, LA 70002
    (504) 828-3700
    *Counsel for Defendant-Appellant Monarch Recovery Management, Inc.*

                              /s/   Michael C. Worsham
                              Michael C. Worsham